In the Matter of the ESTATE OF Father Paul QUINN, a/k/a Paul Thomas Quinn, Deceased.

**PRESENTATION CONVENT OF ABERDEEN, South Dakota, and Anthony Oster, a/k/a Tony W. Oster, Executor, Petitioners and Appellants,**

v.

**Judy CROWE, Claimant and Appellee.**

No. 16542.

Supreme Court of South Dakota.

Considered on Briefs Oct. 17, 1989.

Decided Jan. 17, 1990.

Robert R. Nelson of Bierle, Porter & Nelson, Yankton, for petitioner and appellant Presentation Convent.

Lee D. Anderson of Stiles, Anderson & Swank, Mitchell, for executor, petitioner and appellant Tony W. Oster.

James D. Taylor and James A. Miskimins of Taylor & Miskimins, Mitchell, for claimant and appellee Judy Crowe.

HECK, Circuit Judge.

This is an appeal from orders amending and approving the report and petition for final distribution of Paul Thomas Quinn's (Father Quinn) estate. The trial court concluded that Judy Crowe (Judy) was entitled to eight percent of Father Quinn's residual estate since Father Quinn employed her at the time of his death. We affirm for a different reason, however.

Father Quinn, a Catholic priest, maintained a residence in Ethan, South Dakota. He hired Judy as his housekeeper in 1981. Judy performed customary housekeeping duties: cooking, house cleaning, picking up the mail, and providing transportation for Father Quinn.

Father Quinn executed a last will and testament on June 19, 1985, which contained the following bequest:

> To my housekeeper of many years, Judy Crowe, I give, devise and bequeath an undivided eight per cent share of all the rest and residue of my estate if she be in my employment at the time of my death. If she is not in my employment at the time of my death then this gift to her shall lapse and the same shall be distributed in accordance with the provisions of paragraph Third, part F of this my Last Will and Testament.

Some time later Father Quinn's health deteriorated. After he spent time in the hospital in September of 1987, he decided to move from Ethan to independent living quarters at the Brady Home in Mitchell, South Dakota. Prior to his move, Father Quinn told Judy that he wanted her to continue working for him in Mitchell. He moved on December 12, 1987, but stayed there only one night because he was admitted to the hospital. He then spent the remainder of his life either in the hospital or the nursing home. During his stay in the hospital and nursing home, he told Judy he wanted her to work for him since he planned to return to his independent living apartment when possible. On January 9, 1988, Father Quinn's brother, nephew and future guardian removed his belongings from his apartment at the Brady Home and terminated his lease. Judy performed her last duties as housekeeper on January 14, 1988. She obtained temporary employment elsewhere. She continued to visit Father Quinn in the hospital or nursing home at least once a week. Father Quinn died on March 13, 1988.

Counsel for the parties and the trial court took the position that the issue to be decided in this case was whether Judy was in the employment of Father Quinn on the date of his death.

■ We hold, however, that the controlling factor for a determination of this case is Father Quinn's intention at the time he executed the will, and not solely the employment status of Judy on the date of decedent's death. "A will is to be construed according to the intention of the testator." SDCL 29–5–1. "It is a cardinal rule of construction of every will that the intention of the testator, so far as it can be determined and legally carried out, must govern." *Parker State Bank v. Fields*, 69 S.D. 605, 13 N.W.2d 302 (S.D.1944).

■ At the time Father Quinn executed the will, Judy was employed by him. The will is silent about a situation where Judy's services would not be required because of the state of Father Quinn's health. It can reasonably be inferred that Father Quinn's intention was for Judy to receive the bequest as long as she did not resign her employment position with him, or he did not terminate her employment prior to his death. There was no evidence presented at the trial of either situation. There was evidence, however, that Father Quinn intended to employ Judy "until the end."

We affirm the trial court even though it reached the correct decision for the wrong reason. *Seymour v. Western Dakota Voc. Tech. Institute*, 419 N.W.2d 206 (S.D.1988).

WUEST, C.J., and MORGAN, HENDERSON and MILLER, JJ., concur.

HECK, Circuit Judge, for SABERS, J., disqualified.